NINETEENTH CENTURY CLUB *et al. v.* REICHMAN *et al.*

(*Nashville.* December Term, 1922.)

PRISONS. Statute authorizing erection of jail in Shelby county con-
strued and held to vest power of selecting jail site, jointly in county
and jail commission.

Private Acts 1921, chapter 115, authorizing the erection in Shelby
county of a jail or a jail and penal farm combined, by the clause in
section 11 whereby "the said county of Shelby and Shelby county
jail commissioners are vested with power to acquire any land that
may be deemed necessary as a site," etc., vests the power of
selecting a suitable location for the proposed jail jointly in the
county and jail commission, though after such selection is made
it otherwise provides that either the county or the commission,
or both, may actually acquire the lands by either purchase or con-
demnation.

Acts cited and construed: Acts 1921, ch. 115.

Codes cited and construed: Secs. 1328 to 1348 (Tenn.); Secs. 1844
to 1867 (S.).

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—
HON. F. H. HEISKELL, Chancellor.

MCLAIN & BEJACH, for appellants.

HOLMES & CANALE and T. K. RIDDICK, for appellees.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This is an injunction suit instituted for the purpose of perpetually enjoining the defendants, who are the jail commissioners of Shelby county, under the provisions of chapter 115 of the Private Acts of 1921, from paying for a lot, which adjoins the club building of complainants, and building a county jail thereon.

The bill was demurred to, and on the hearing the demurrer was overruled by the chancellor, and, in his discretion, he permitted the defendants to appeal to this court.

The defendants jail commissioners decided upon the lot in question as the most suitable place for the location of said jail, and entered into a contract for the purchase of same without advising with or obtaining the consent and concurrence of Shelby county, and the chancellor based his decree upon the proposition that, under a proper interpretation of the act in question, it was necessary for the county to act jointly with said commission in selecting a suitable location for the proposed jail.

The caption of said act is as follows:

"An act to authorize Shelby county to issue bonds in a sum not exceeding five hundred thousand ($500,000) dollars, after a vote of the people at an election to be held, as herein provided, shall authorize said bond issue, for the purposes of either building a jail or a jail and penal farm combined, and for the purposes of acquiring any lands necessary for such jail or for said jail and penal farm; to appoint a commission known as the Shelby county jail commission, to have charge and control of the erection of

said jail or jail and penal farm, in the discretion of said commission; to confer upon said county of Shelby and said commission the right to acquire any lands necessary for said jail or for said jail and penal farm, and to authorize said county and said commission severally and jointly, to acquire such lands by purchase or condemnation; to confer upon said county and said commission severally and jointly the right of eminent domain as prescribed by law; to authorize said county and said commission to do all other things necessary on their part in connection with the erection and equipment of said jail and penal farm; to fix the terms of the members of said commission, the method of selection of their successors and their powers and duties and their compensation; to provide for the payment of said bonds and interest thereon; and to provide for the exemption of said bonds from taxation, state, county and municipal, as provided in chapter 8 of the Public Acts of the Special Session of the General Assembly of the State of Tennessee for the year 1920, entitled 'An act to provide that any and all bonds hereafter issued by any and all of the counties of the State of Tennessee without regard as to when authorized, upon the faith and credit of such counties for public purposes, shall not be taxed either by the state or any county or municipality of the State, or any other act or acts exempting bonds from taxation.' "

Analyzing the caption, it appears:

(1) That Shelby county (without the aid of the jail commission) was to issue the said bonds.

(2) That the jail commission (without the aid of the county) is to have charge and control of the erection of said jail.

(3) That the right is conferred upon the county and said jail commission (jointly) to acquire any lands necessary for said jail.

(4) The county and the commission are to severally and jointly acquire such lands by purchase or condemnation.

(5) The power of eminent domain is conferred upon the county and the commission severally and jointly.

(6) To authorize the county and the commission to do all other things necessary on their part in connection with the erection and equipment of said jail.

Apparently sections 3 and 4 of the above analysis are in conflict, but the probable meaning of the legislature was this: That section 3 authorizes the joint acquiring or selection of the land, while section 4 provides the manner of acquiring the land; that is, by purchase or condemnation. In other words, having selected the site jointly either or both may perform the ministerial act of procuring the conveyance of the property.

Analyzing the body of the act, it is provided, in the first eight sections, that upon authorization by the voters, at an election to be held, Shelby county may issue bonds in an amount not exceeding $500,000, to be used in procuring a site and erecting thereon a jail or a jail and penal farm.

Section 9 provides for the creation of the commission.

Section 10 provides for the organization of the commission, that the county of Shelby shall turn over to the commission the net proceeds derived from the sale of the bonds, and the latter part of this section is as follows:

"Said commission shall have full and complete authority to purchase land for the erection of said jail or jail and penal farm, and to make any and all contracts for the

erection, furnishing, equipment, and completion of same.
The said Shelby county jail commission shall have full
and complete authority to determine as to whether a jail
shall be built or as to whether it is to the best interest of
the county of Shelby to have a jail and penal farm com-
bined. The said commission is hereby given full and com-
plete authority to erect either a jail or a jail and penal
farm combined and their action in the matter shall be
final."

Section 11 is as follows:

"Be it further enacted, that the said county of Shelby
and said Shelby county jail commissioners are vested with
power to acquire by purchase or condemnation any land
in Shelby county, Tennessee, that may be deemed neces-
sary as a site for said jail or for a jail and penal farm, in-
cluding the power to close public alleys, streets and roads
on the site; and for the purpose of acquiring any such
lands, the right of eminent domain is hereby expressly con-
ferred upon said county and said commission, severally
and jointly, to be exercised in the manner prescribed by
law and particularly as set forth in sections 1325 to 1348
of the Code of Tennessee (sections 1844 to 1867, Shannon's
Code, Annotated, 1917). Said right of condemnation shall
likewise extend to the condemnation of any leaseholds.
The compensation for said land so condemned shall be
paid out of the proceeds of said bonds in all respects the
same as if the said property were acquired by purchase.
The title to all of said property used for said jail site or
jail and penal farm shall be taken in the name of Shelby
county. Upon the completion of said jail building, the
Shelby county jail commission shall turn same over to
Shelby county, and make a final financial statement and

report to the county court of said county, and be discharged from their duties."

The chancellor, before whom this cause was tried, filed a written opinion, in which he clearly and ably analyzed the act, and we here quote from his opinion as follows:

"Bear in mind that down to section 11 the act clearly vests sole power in the county to issue bonds and sell them, and clearly vests sole power in the jail commission to decide as between a jail with and without a penal farm, and vests sole power in the commission to erect either. The act then having shown unambiguous aptitude in vesting sole power first in the county and then in the jail commission, was it intended by the language quoted from section 11 to vest sole power in the jail commission to select a site, fix the location, determine how much land was necessary, decide whether streets, alleys, or roads should be closed, or was this power vested jointly in the county and the jail commission? The language is: 'The said county of Shelby and said Shelby county jail commissioners are vested with power to acquire any land that may be deemed necessary as a site, including the power to close public alleys, streets and roads on the site.'

"After this the act provides for a joint and several power of condemnation in the county and the commission, but it will be noticed that in the only place where the selection of a site is provided for, nothing is said about vesting a joint and several power, but the power is vested in the county and the jail commissioners.

"Again the language used is, 'Any land that may be deemed necessary as a site.' This is apt language in regard to the selection of a site—'that may be deemed necessary as a site.' Deemed necessary by them? The county alone?

The commissioners alone?   Or by the two agencies jointly?
Suppose the language be changed from the passive to the
active form, 'The county and the jail commissioners are
vested with power to acquire any land they may deem nec-
essary as a site.'  It would not be debatable that the very
'deemed' referred to the two agencies combined.  But yet
it seems that this language transposed into the active form
would be the exact equivalent of the passive form.

"But it is said by counsel for defendants that section 10
provides that the commissioners shall have power to pur-
shase land for a jail.  This is true and this was proper.
The commission was to hold the money.  It was to be
turned over to the commission by the county when the
bonds were sold.  But this part of section 10 must be read
in connection with section 11 and they are not in conflict.

"The first sentence of section 11 evidently means the
same as if it read, 'The county of Shelby and the jail com-
mission shall have power to select any land they may con-
sider necessary as a site and to acquire the same, and may
select such site even if it involves closing alleys, streets
and roads.'  Nothing is here said about joint and several
action; nothing said about either agency acting alone; but
after the site has been selected, the location determined by
the joint action of the two distinct agencies, then the com-
mission may purchase such land. acting alone or jointly
with the county, or the county and commission may con-
demn jointly or severally.  The power to purchase is not
conferred on the county alone because it has no money.
The act contemplates that the county shall sell the bonds
and turn over all the money to the commission.  The lan-
guage of section 10 is therefore not at all in conflict with
this construction of section 11.  Section 10 provides, 'The

147 Tenn.—27

county of Shelby shall turn over to the Shelby county jail
commissioners the net proceeds of the bonds issued and
sold . . . said funds to be used for the acquisition of
any lands necessary for the site of .said jail or jail and
penal farm and the erection, equipment and completion of
[said jail]. . . . Said commission shall have full and
complete authority to purchase land for the erection of
said jail or jail and penal farm, and to make any and all
contracts for the erection, furnishing, equipment and com-
pletion of same.' Power of purchase is given the commis-
sion because it holds the fund, and said fund was to be used
to acquire any land necessary for the site. But what land
is to be considered necessary for a site is to be determined
under section 11 by the county and commission acting to-
gether. Nowhere else in the act is this power given to
select a site and determine what land is necessary to be
acquired.

"This construction is the only one that gives meaning
and effect to all the language of the act, including the
caption. It is reasonable, because it is not to be presumed
that the legislature would have failed to provide for so
important a part of this scheme as the selection of the lo-
cation and because it is natural to provide that the county
—the perpetual public agency—the unceasing branch of
the state government, should be consulted about the loca-
tion of the county prison, especially if a site was to be se-
lected which made it necessary to close alley, street, or
road.

"This construction also leaves room for a reasonable ap-
plication of all other language of the act. The county
alone is to provide the money by a bond issue, and turn the
fund over to the commission, which is to use it in build-

ing after it has decided whether to have a penal farm or not, and the site has been acquired, but the selection of the site must be by the joint action of the county and the jail commission.

"This construction is also in consonance with the caption of the act, and avoids any conflict between the caption and the body of the act and between the different parts of the act.

"In view of this construction given to this part of the act, and in view of the argument that the legislature intended to give to the county, the permanent agency, the governmental agency, a voice in the selection of a site, it may seem strange that the commission was vested with power to decide whether it is better to provide a jail alone or one with a penal farm, and that it might be said that this shows that the act did not intend to so defer to the county. This, however, is to be considered: Giving the county the right to participate in the selection of a site gives it a check upon the determination as to a jail alone or one with penal farm. As, if the commission wanted a penal farm, and the county thought this would put the jail site too far out, the right to object to the site might modify the plan, and *vice versa.*

"The argument is made by counsel for the defendants that the language of the first sentence of section 11 was used solely because the county was to be vested with the title to the jail. I do not see that this contention is entitled to any weight. It was not considered necessary to provide that the county and commission should jointly issue and sell the bonds because the proceeds were to be turned over to the commission alone.

"This construction given to the statute is conclusive as to the right of the complainants to maintain the suit and the injunction, and makes it unnecessary to dispose of the other questions raised by the pleadings."

Taking the caption and the body of the act together, we are unable to say that the legislature intended to vest in the commission the sole power to select the site upon which to locate the jail.

It would be both reasonable and right to permit the county to have a voice in this matter. If the construction of the act is a doubtful one, then the doubt should be resolved in favor of the county, in view of its paramount interest.

There is no express provision in the act authorizing the commission to select the site, and if the language in section 11 means anything, it means that the location must be made by the county and the commission jointly.

This seems to be in line with the recitations in the caption, as we have construed it, in which it is provided that the county and the commission shall jointly acquire the lands (that is, agree upon the location), and that after this is done either the county or the commission, or both, may actually acquire the lands by either purchase or condemnation.

Learned counsel for the defendants have not undertaken to analyze section 11, and to give its language a meaning contrary to that set forth in the opinion of the chancellor, and, without eliminating that portion, we are unable to construe the act in accordance with the views of the defendants.

We therefore feel constrained to affirm the decree of the chancellor and to remand the cause for further proceedings.

All costs will be paid out of the funds in the hands of the commission.